George Anderson will be right back. Thank you for indulging me. The arguments in the last case were so interesting I got hot with a sweater on. I call the case of Rhodes v. Lazy Flamingo 2, Inc., Mr. Merritt. May it please the court. Good morning, Your Honors. Counsel. Your Honors, we are here because in a negligence per se trial, the court allowed the jury to determine the standard of care. In July 2012, Vincent Rhodes brought his wife, Diana, to Florida for a final fling before he received a liver transplant. At the Lazy Flamingo, Mr. Rhodes ate raw oysters infected with a bacterium called Vibrio vilnificus and, as a result, was hospitalized for five days, three of them in intensive care. Vibrio is so dangerous to people with liver disease that Florida's administrative code requires a specific warning in restaurants serving raw oysters. Rule 64D-3.040 subsection 8 of the administrative code requires those restaurants to display quote, either on menus or on table placards, the following notice. Consumer information. There is risk associated with consuming raw oysters. If you have chronic illness of the liver, stomach, or blood or have immune disorders, you are at greater risk of serious illness from raw oysters and should eat oysters fully cooked. If unsure of your risk, consult a physician. Both of the district court judges who presided below determined that this rule establishes the standard of care for the sale of raw oysters in restaurants. The jury instructions distributed to the jurors at the beginning of the case cited this rule as the standard of care. Now, during the trial, it was discovered that Lazy Flamingo had a Vibrio warning posted on the wall of the restaurant and a different warning on its menus. However, Lazy Flamingo never claimed or adduced any evidence that it had given the warning required by the rule on menus or table placards. Let me ask you a clarifying question. There's another regulation called Sanitation Safety Requirements, which is section 61C-4.0108. It's my understanding that that regulation went into effect after Mr. Rhodes ate at the Lazy Flamingo. Is that right? I believe it is a subsequent rule. In any event, the applicable rule was litigated during the pretrial process, and it was determined that 64D-3.040 sub 8 was the governing rule. Okay. And the other regulation seems a little bit inconsistent insofar as where the notice is, but that's not an issue here. Is that right? Correct, Your Honor. Thank you. Lazy Flamingo introduced an industry bulletin, a circular distributed by the Florida Department of Business and Professional Regulation. This bulletin said that the required warning could be displayed on menus or table placards as required by the rule, but also said it could be displayed on the wall. That bulletin was an incorrect statement of the rule regarding Vibrio warnings, which  itself was not a law or a rule. The original jury instruction recited the rules requirement that the warning be placed on menus or table placards and said, quote, violation of this administrative rule is negligence. If you find that defendant Lazy Flamingo restaurant violated this rule, then defendant Lazy Flamingo was negligent. After the evidence closed, the trial court, sua sponte, added this language. You may also consider the industry bulletin for Florida's seafood industry dated July 11, 2011. If you find the defendant violated this regulation, then the defendant was negligent. The Rhodes is timely objected to the new instruction. Did you object when the bulletin was introduced into evidence? The record is not . . . no, ma'am. No, ma'am. There was not an objection to its introduction into evidence. Does that affect our analysis at all? No, ma'am. If not, as I will address later on, but I can address now, is that we're dealing with whether the standard of care to be applied by the jury was a question of law or a question of fact. The rule was an exhibit in evidence. It was never adopted by the court or accepted by the court in any of the pretrial litigation or in any of the litigation as the law establishing the standard of care for Lazy Flamingo. It was simply a commentary on the rule distributed as a circular by the Department of Business and Professional Regulation. Is that the same department that monitors and enforces 64D-3.0408, in other words, the regulation applicable here? Was that the same department that enforces that law? I can tell you honestly I do not know. And the record doesn't even show that? I don't believe it does. And there was no argument or evidence in this case that the department that is responsible for enforcing and interpreting 64D, the regulation at issue here, no evidence or argument that the department that is responsible for that regulation issued the bulletin and or was establishing that bulletin as a reasonable interpretation of the regulation. I do not believe that that issue was argued. And is there any evidence in the record to the effect that that bulletin was supposed to be a reasonable interpretation of the regulation? What we know about the bulletin is simply this, that it was promulgated by the Department of Business and Professional Regulation on July 11, 2011, to the seafood industry restaurants. I believe it was distributed by the health inspectors. But we don't know whether it was promulgated by the department responsible for interpreting the regulations or enforcing it. I do not know, Your Honor. Okay. Your Honor, the language added to the sua sponte, to the jury instruction, was you may also consider the industry bulletin.  You marked it as plaintiff's exhibit. What number? I believe it was marked as A. It was used as a demonstrative aid in direct examination of a witness. By the plaintiff's counsel? By the plaintiff. And then I was not with that witness, but I was trial counsel. Okay. I'm just trying to see how it got injected in the case. It was then offered into evidence by the defense, as I can best understand the record, having been there and having read it. It appears to have been offered by the defense during cross, and there was no objection raised to the untimeliness. Okay. And so the bulletin got into evidence? Yes, ma'am. And I was confused whether, because you had it initially using it to cross-examine the witness. Used it on direct of the witness. Direct. And ask them about some of the content, right? Some part of the precatory language in the bulletin. Okay. So you got into the content of the document with the witness? Correct, Your Honor. Okay. And then the defense used it on cross? And introduced it, yes, ma'am. And did the defense say, I hereby introduce it, or did the defense say, since the plaintiff used it, I think it should go into evidence, or how did that come about? Basically, I think the trial court may have asked if it was in evidence. The defense said, I'm not sure, but I have no objection. We didn't object to it. The plaintiff didn't object to it, and it ended up. Whoever offered it, it got into evidence with no objection by the plaintiff? I believe that is correct. Because to me, if this case, that bulletin had never come in, they wouldn't have had the bulletin, you see. So now it's in evidence, and then what happens? Then what happens is the crisis that brings us here. The jury is confused by this additional instruction that they may consider not only Rule 64D 3.040 Sub 8, I hope I said that right, but may consider the bulletin as well. This is added to the jury instruction. Clearly, the jury was confused by the insertion of this new element. And you objected to that? Yes, Your Honor. While we're on that point, the jury charge went out to the jury in writing, correct? Went out before the trial started, was then amended, and went out at the time that the court instructed them. As I understand it, the code regulation that just refers to menus and table placards, that was quoted verbatim in the jury charge? Yes, ma'am. They had that out too? Yes, ma'am. And then if the bulletin is in evidence, why can it not be considered? This is exactly the thrust of the appeal. It cannot be considered because the rule is there as the standard of care, which is a question of law. The bulletin is a mere exhibit on whatever issue of fact it may pertain to. The standard of care is determined by the court as a matter of law. You cannot conflate law and evidence because any item of evidence may be discarded and disregarded by the jury, but they must accept the law determined by the court, which in this case was the rule, not the bulletin, and there's a zero. Why couldn't that go to whether the defendant acted negligently here because he got this subsequent bulletin and we look at the overall case? Why couldn't they consider it in deciding whether the defendant was negligent? Because as a result of pretrial litigation, the case had been narrowed down to a single count of negligence per se for violation of a police powers regulation to the harm of a person within the protected class. You're saying you had to have strict compliance with the code and the bulletin means nothing. Correct. Violation of the code is negligence per se under the pretrial rulings of the court. Could they consider it on proximate cause? They could consider it like any evidence for whatever weight they might give it. My personal opinion is that it's not relevant to any issue before the court, but remember, please, that the jury never got to the question of causation. This was a no negligence case in a per se negligence action or a no negligence verdict in a per se negligence.  Did you move for a verdict on negligence? Yes, ma'am. You said don't submit anything but the damages to the jury? Yes, ma'am. What did the trial court do? Allow it to go to the jury. Did you appeal that ruling going to the jury? I'm talking about failure to grant summary judgment as a matter of law. No, ma'am. As a matter of law? No, ma'am. Okay. That's part of the problem here. If you don't have a negligence per se case. I don't know. Thank you. Thank you, Your Honor. Thank you for trying to help me. You saved five minutes for a rattle, Mr. Merritt. Thank you. Please, court. The question of compliance or noncompliance with this code was really the question that went to this jury. The question of compliance or noncompliance is, matter of fact, supported. The noncompliance verdict that the jury arrived at was supported by five different pieces of evidence that came in. This confusion that is characterized, we would submit, is not a confusion between the bulletin and between the code. It's a question of compliance or noncompliance. As the court is aware, in the course of the case, we tended to refer to the industry bulletin as the Bible. We did so simply because the court is familiar with religious scriptures. They are always subject to interpretation, as are our administrative codes and our laws very often. That's why we have so many disagreements about it. There are five pieces of evidence that made it very clear that supported the jury's verdict that there was, in fact, compliance. The primary two pieces of evidence were two health inspector officials who testified, one for the county, one for the state of Florida, that investigated this particular incident and found the defendant to be in total compliance with the administrative code. We do have a matter of interpretation. The interpretation and application of 64D by both the health department officials, inspectors, and the county. We have two witnesses that were responsible for the interpretation, application, and enforcement of 64D who found the restaurant to be in compliance. One of those two individuals, as a matter of fact, was the very inspector who would regularly inspect this restaurant prior to the incident in question and found at all times that the restaurant was in compliance with the signage and the ordinance and the codes. In fact, the testimony and evidence in the case demonstrated that these signs are not signs that the restaurants make up and put up. These are signs that are actually issued by the state of Florida. There's an official date of issuance and that type of thing for the posting. So the restaurant, as you can imagine, particularly seafood restaurants in the state of Florida, of which there are many, do not have the capacity to interpret and apply the administrative code to a large extent. This was brought out by part of the plaintiff's own expert, Gary Roderick, that the interpretation, application, and enforcement of the many, many, many rules governing restaurants, and particularly seafood restaurants, those restaurants rely at least in part on the detailed interpretation, application, and enforcement of the health officials. In fact, the testimony and evidence was that they were at all times in compliance with the state codes and requirements. In fact, the plaintiff's own expert, and we cited to it in our brief, the plaintiff's own expert, Gary Roderick, alluded to the fact that often the inspectors and enforcers of the administrative code will find compliance where maybe there isn't a technical compliance, but in fact they will interpret it and apply it in a manner which is consistent with their interpretation and enforcement and the application of it from a practical standpoint. So first of all, we have two health officials. We have the plaintiff's expert who concedes that by virtue of the fact that the signage was visible, the correct and accurate signage was visible in the restaurant, that there was compliance. .         org, expensive and 아니에요 uh Dubai University system to invest in the buildings installed and systems of accepted or discarded like any other evidence. The rule was not evidence. It was the governing law as settled in the pretrial litigation as things turned out the jury was left to decide the standard of care to choose between the bulletin and the rule. The result was that in a negligence per se case in which all evidence without exception showed that lazy Flamingo failed to apply to comply with the rule. The jury returned a verdict of no negligence. If the case is retired is the bulletin going to come in evidence or you can object to it as irrelevant to anything in the case. I shall vigorously object to its introduction. It shouldn't even be an evidence according to your view of the case. I don't see that it could be under some factual scenario. One might conjure relevant to something but I don't see it as the case was tried. The error though, the error really stemmed from here. If this bulletin got in evidence, if it has no interpretive effect, it has no relevance to anything. If we got to go by the regulation, it can only be complied with on the table of menu cards. Why do we get the bulletin in? The error was not in the admission of irrelevant evidence. The error was in the treatment of evidence and law as being of equal dignity, of treating evidence and law as though they were to be considered identically by the jury and ultimately in giving by placing rule 64D and the bulletin both before the jury and saying you can look at both of them, telling the jury you decide the standard of care. Well, we all learn among the first things that we learn as baby lawyers that issues of fact are for the jury, matters of law are reserved to the court. It was for the court to decide whether the rule or the bulletin, however the bulletin came in, whether the rule or the bulletin established the standard of care and it had long since been established and it continues to be true as a matter of law that the standard of care. The bulletin is not a reasonable interpretation of the regulations? It is not. Do you think it would have no legal effect? I believe it is . . . Well, that's what they followed. The industry puts it out. It's got no legal effect whatsoever. In a negligence per se case, no, ma'am, no legal effect whatsoever. Did you argue that the bulletin was not a reasonable interpretation? Did you say that to the jury or anything like that? My recollection and my brief review of the plaintiff's argument, and my time is out, is that we argued, I argued, I argued the case to the jury, simply that the rule was what counted, the rule determined the verdict, the rule was the standard of care without making reference to the bulletin is my best recollection and I have looked at it as much as I could stand recently. That's a great answer. Thank you. Thank you. May we be excused?